FRUTO RAMOS TORRES, Plaintiff and Appellant, *v.* RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO ET AL., Defendant and Appellee.

No. 8657. Argued November 12, 1943.—Decided March 6, 1944.

R. *Cuevas Zequeira* for appellant. *M. Rodríguez Ramos, Acting Attorney General,* and *A. E. Franco Cabrero, Deputy Attorney General,* for appellee Treasurer. *Abelardo Román Font* and *Federico E. Virella* for appellee municipality.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The question here in controversy is whether Act No. 174 of May 13, 1941, ([1]) is constitutional. Said Act levies a tax of 2 per cent on the assessed value of the lots that the Municipality of Caguas gave in usufruct to the residents of that city. The case was submitted by stipulation on the facts alleged in the complaint and the answer. The District Court of San Juan rendered a declaratory judgment upholding the constitutionality of the Act. The contention of the taxpayer appellant is predicated upon: (a) that the Act in

([1]) Said Act provides in its pertinent part as follows:

"Section 1.—There is hereby authorized and levied a tax on the use of every lot given in usufruct by the Municipality of Caguas in the urban zone thereof. This special tax on the use of said lots shall be of two (2) per cent on the assessed value of the lot, according to an official assessment that shall be made by the Treasurer of Puerto Rico, and it shall be paid by the usufructuaries for the benefit of the Municipality of Caguas, for the purposes hereinafter provided; *Provided,* That this Act shall not be construed to deprive the taxpayers of the exemption granted to them by property tax laws. The tax shall be assessed on what may remain of the value of each lot, after deducting therefrom the exemption granted by law to the taxpayers, unless such exemption has already been deducted when computing the tax on other properties. If the value of the lot does not exceed the exemption, and the latter has not already been computed in the assessment of other taxes, the usufructuary shall not have to pay the tax levied hereby.

"Section 2.—The Treasurer of Puerto Rico shall proceed to make a general assessment of such lots owned by the Municipality of Caguas in the urban zone, as may have been granted in usufruct, and shall levy and collect the tax on the assessed value thereof as hereby provided, for the benefit of the Municipality of Caguas, for the year 1941–42 and subsequent years; and from the proceeds of said tax he shall withhold for the insular treasury five (5) per cent to cover the expenses of assessing the lots and of levying and collecting the tax; and ninety-five (95) per cent of same shall be monthly remitted to the Municipality of Caguas as it is collected, without the Treasurer being able to retain any portion thereof.

"Section 3.—The proceeds of this tax shall be expended and devoted by the Municipality of Caguas, solely and exclusively to the construction, repair, alignment, paving, asphalting, planting of trees on, and conservation and maintenance of the streets of the urban zone of Caguas, and to the improvement, repair, conservation and maintenance of Palmer Park of Caguas. The proceeds of this tax shall be covered into a special fund which shall not be used for other purposes.

"Section 4.—The Municipality of Caguas shall, by ordinances, approved by the Mayor, make periodical application of the proceeds of this tax as received."

question denies the usufructuary taxpayers of the lots in the city of Caguas the equal protection of the laws, inasmuch as said tax is not levied on lots given in usufruct by other municipalities in the Island of Puerto Rico, thereby creating a discrimination against the usufructuaries of the lots of Caguas, and, therefore, that said Act No. 174 lacks the requirement of uniform application provided by paragraph 22 of § 2 of the Organic Act; (b) that said Act violates paragraph 5 of § 2 of the Organic Act because it impairs the obligation of the contracts originally executed between the Municipality of Caguas and the usufructuaries of the lots, inasmuch as, according to the plaintiff, it imposes on the usufructuaries certain conditions on which, at the time of execution of the contract of usufruct, the Municipality of Caguas and the usufructuaries did not agree; and (c) that said Act is confiscatory because in the event that the usufructuaries of the lots could not pay the tax provided by the Act, said usufructuaries would be liable with their own private property, which could be attached and sold at a public sale to collect payment of said tax, notwithstanding the fact that they did not acquire the usufruct of said lots subject to the payment of any tax.

The lots affected by Act No. 174 were acquired by the Municipality of Caguas partly through donation of a parcel of land of 81 acres given in 1819 for the foundation of the city. The rest were acquired by purchase on different occasions. Up to the time that said Act was enacted, no tax had been levied on them. However, the Legislative Assembly thought it only fair and just that those lots should contribute, like private property, to the support of the municipal government of Caguas and provided for the special tax now under discussion. Section 3 of the Act provides that the proceeds of this tax shall be expended and devoted by the Municipality of Caguas, solely and exclusively to the construction, repair, alignment, paving, asphalting, planting of trees on, and con-

servation and maintenance of the streets of the urban zone of Caguas, and to the improvement, repair, conservation and maintenance of Palmer Park of Caguas. So that the tax in controversy is a local matter and for the exclusive benefit of a specific area, the urban zone of the Municipality of Caguas.

The Organic Act does not prohibit the enactment of special laws by the Legislative Assembly. On the contrary, § 37 provides that the legislative authority shall extend to all matters of a legislative character not locally inapplicable, and in § 2 of the Organic Act itself it is provided that "All money derived from any tax levied or assessed for a special purpose shall be treated as a special fund in the Treasury and paid out for such purpose only except upon the approval of the President of the United States." In the case of *Puerto Rico* v. *Shell Co.*, 302 U. S. 253, 261, the Supreme Court of the United States, after citing § 32 of the Foraker Act and §37 of the Organic Act in force and commenting on the broad powers granted to our Legislative Assembly by the Organic Act, said:

"The aim of the Foraker Act and the Organic Act was to give Puerto Rico full power of local self-determination, with an autonomy similar to that of the states and incorporated territories. [Citations] . . . . . The power of taxation, the power to enact and enforce laws, and other characteristically governmental powers were vested. And so far as local matters are concerned, as we have already shown in respect of the continental territories, legislative powers were conferred nearly, if not quite, as extensive as those exercised by the state legislatures."

And in the more recent case of *Puerto Rico* v. *Rubert Co.*, 309 U. S. 543, the Supreme Court confirmed its holding in *Puerto Rico* v. *Shell Co.*, *supra*, and, speaking through Mr. Justice Frankfurter, it expressed itself thus:

"The breadth of local autonomy reposed by Congress in the Legislative Assembly was elucidated too recently and too thoroughly in *Puerto Rico* v. *Shell Co.*, . . . , to call for repetition here. Suffice

it to say that the opinion in that case underlined the fullness of scope which Congress gave to Puerto Rico when it provided by Section 37 of the Organic Act of 1917 that 'the legislative authority shall extend to all matters of a legislative character not locally inapplicable. . .' "
(p. 547).

 The appellant maintains that since the special tax was levied exclusively on the usufructuaries of the lots in the urban zone of the Municipality of Caguas, and not on the usufructuaries of lots on other municipalities, said Act is not uniform and constitutes a discrimination against the usufructuaries of the lots of the urban zone in the Municipality of Caguas, thereby denying them the equal protection of the laws.

It is already settled that the legislative power conferred by Congress on the Legislative Assembly of Puerto Rico is nearly, if not quite, as extensive as those granted to the state legislatures. Therefore, if we are able to show that the latter may exercise, and as matter of fact, that they do exercise, the same power that our Legislative Assembly exercised by enacting Act No. 174, we shall have no doubt that the challenged Act is constitutional.

In the case of *Ft. Smith Light Co.* v. *Paving Dist.,* 274 U. S. 387, the Legislature of Arkansas passed a statute requiring the appellant, a street railway company, to pave a part of certain streets in Fort Smith, Arkansas, between its rails. The provisions of the act were applicable to the appelant company alone, even though there existed other street railway companies in the State of Arkansas. When suit was brought against the Fort Smith Light and Traction Company for the recovery of the cost of the paving which it had failed to accomplish, it contended, as does appellant herein, that since there existed other railway companies in the State, some of which operated their cars under indeterminate permits, the same as appellant, who were not required to pave the streets, the act in question denied it the equal protection of

the laws. In deciding appellant's contention, the Supreme Court said:

". . . The Fourteenth Amendment does not prohibit legislation merely because it is special, or limited in its application to a particular geographical or political subdivision of the state. [Citations] If a state may delegate to a municipality power to require paving by a street railway located within its limits, [Citation], we perceive no reason why it may not, by a legislative act, make a like requirement limited to a single municipality.

"* * * * * * *

"There are no facts disclosed by the record which would enable us to say that the legislative action with which we are here concerned was necessarily arbitrary or unreasonable or justify us in overruling the judgment of the state court that it was reasonable." (Pp. 391, 392)

To the same effect, see the work of Professor Charles K. Burdick, The Law of the American Constitution, page 595, § 280.

In our opinion, it has been established beyond all doubt, by the authorities cited, that our Legislature, similar to the state legislatures, may validly exercise the power which it exercised in enacting said Act.

It is evident that the persons affected by the special tax will derive some benefit from the improvements effected in the streets and in Palmer Park in the city of Caguas. Besides, the tax is uniform as to all the usufructuaries who will pay 2 per cent on the assessed value of their respective lots.

The record does not disclose that the Municipality of Caguas, when receiving the donation of the 81 acres of land above referred to, and much less when granting the usufruct of the lots, did so subject to the condition that said lots would be exempted from taxation. But conceding, for the sake of argument, that such condition could limit the very broad power which, as we have seen, our Legislature Assembly has to levy taxes, we do not see how Act No. 174 involved herein, can impair a nonexistent obligation of contract of usufruct,

unless one should maintain the absurdity that said tax is equivalent to a lease rental of said lots.

██ Finally, it is maintained by the appellant that Act No. 174 is confiscatory because, in the event of default in the payment of the tax levied, he is running the risk of having his private property sold at a public sale to satisfy said payment. It suffices to say that every taxpayer runs the same risk and for that reason alone it can not be said that the tax is confiscatory.

For the reasons stated the judgment is affirmed.